# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### NOVEMBER TERM, 1883.

THE CITY POTTERY COMPANY, appellant,

*v.*

JAMES YATES, respondent.

In case of proceedings taken to wind up an insolvent corporation, a receiver should not be appointed if it appears that the directors are closing its affairs, and that such directors are in all respects trustworthy.

On appeal from an order appointing a receiver, advised by Vice-Chancellor Bird, whose conclusions are as follows:

On the rehearing it was insisted that the petitioner should be dismissed, because from the evidence it does not appear that the court has jurisdiction of the case. The statute determines the facts which give jurisdiction. The seventieth section of the act

543

respecting corporations declares " that when any incorporated company shall have become insolvent or shall suspend its ordinary business for want of funds to carry on the same, it shall and may be lawful for any creditor or stockholder to apply by petition or bill of complaint to the chancellor," and directs that the chancellor may proceed in a summary way to hear the proofs; and if upon such inquiry " it shall appear to the chancellor that the said company has become insolvent and shall not be about to resume its business in a short time thereafter, with safety to the public and advantage to the stockholders," the chancellor may issue an injunction restraining the company from exercising any of the privileges named in the act. The seventy-second section declares that it shall and may be lawful for the court of chancery, if the circumstances of the case and the ends of justice require it, at the time of ordering the said injunction or at any time afterwards during the continuance of said injunction, to appoint a receiver.

This company suspended its ordinary business more than a year ago. It does not intend to resume. It was then very largely indebted, and still is. Their assets have been diminished and interest has been accruing on a very large sum.

It has been *unable* to pay its debts. Its notes have been renewed from time to time and they are still unpaid. On March 27th, 1883, it wrote to one of its creditors (whose notes, amounting to over $3,000, it had been renewing for a long time) in these words:

"There are two of our notes due you, falling due on the 28th and 30th of this month, which we much regret to inform you we will be unable to provide for as in the manner of the past, and will not be able to make any further payments until we realize funds from the sale of the property."

And according to its own showing at the best, taking the assets at the valuation put upon them by one of its officers, they amount to only $84,000, while its liabilities are $80,000.

What have we, then? the suspension of business for over a year; acknowledged inability to meet its own notes as they fall due, or to renew the same and pay the interest and a small part

City Pottery Co. *v.* Yates.

of the principal; and the exceedingly small margin of $4,000 of assets in excess of liabilities, which amount to over $80,000. These facts gave the court jurisdiction. Whenever an individual or corporation cannot do business in a business-like manner, he or it is liable to be declared insolvent.

It is also insisted that the petition should be dismissed because the petitioner, being a stockholder and director, participated in the action of the board of directors which authorized the suspension of business and directed the sale of the real estate (which sale the petition sought to restrain), and is therefore estopped. The case *In re Gold Company, L. R. (7 Ch. Div.) 701*, is cited and relied upon to sustain this view. With all our respect for and confidence in the adjudications emanating from England, it will, perhaps, be safer for the trial judge to abide by the statute, which declares that " it shall and may be lawful for any creditor or stockholder to apply." It seems to me that to interpolate, " provided the stockholder has done nothing to estop him from so applying," would not deserve the name of construction. I think this right of the stockholder is one of the most valuable. Who knows better the situation, and why should he, because, perchance, he may have acted affirmatively on a question, be prohibited from asking the aid of the court?

And, lastly, it is said the petition should be dismissed because the ends of justice do not require the aid of the court in disposing of the assets of the company and in distributing them among the creditors. It is urged that the present board of directors are capable and honest, and that they will administer all these assets according to law. It is well understood that the appointment of a receiver is discretionary. The statute imposes the obligation on the court in these words, " if the circumstances of the case and the ends of justice require it."

Let us consider. One fact might be supposed to be weighty enough, viz., that after a suspension of over a year, it should still owe over $80,000. But there are other facts. After the suspension of business for nearly one year, the company executed a bond and mortgage on its real estate for $23,300 to Messrs. Davenport & Bros. Mr. S. W. Davenport was a member of the firm of

Davenport & Bros., of New York, dealers in such goods as the defendant manufactured, and also a stockholder in and president of the company. The history of this transaction comes from the defendant's witnesses. It appears that Mr. Davenport joined his fortunes to this company in the year 1877. On the 20th of December, 1881, the defendant owed the firm of Davenport & Bros. $18,000, but the precise manner in which the indebtedness arose does not appear. On that day a resolution was passed reciting that the company needed more money as a working capital to carry on business more successfully; and that the firm of Davenport & Bros. had been loaning to the company money and their credit by drawing notes to the order of the company; and that said firm had expressed a willingness to continue doing so to an amount not exceeding $25,000 at any one time, providing the company would give collateral security; and resolving to give a bond and mortgage on the real and personal estate of the company to said firm for all loans and notes not exceeding $25,000 at any one time, to protect them from loss for loaning money and their credit by drawing their notes, or by endorsing notes for the use of the company.

In a few days, it became apparent the company was losing money. In about four months it resolved to suspend business. Before the mortgage was executed (which was not done until about fifteen months after the date of the resolution authorizing it) the liabilities of the company to Davenport & Bros. amounted, at one time, to over $38,000. How or when all this originated is not satisfactorily shown; but as the testimony stands, I see no reason to question its genuineness. It would be more satisfactory if it appeared whether or not any great part of this credit or cost was advanced after the passage of the said resolution or before. It is very certain that a large portion of it consisted of payments made by Davenport & Bros. of liabilities which they had incurred before and which existed at the time of the passage of the resolution; whether part of or in excess of the said $18,000 or not, does not appear.

But without attempting to analyze further the precise nature or times of the liabilities, I pass to the payment and security of

them.   In April, 1882, the company suspended business.   Davenport & Bros.' account then aggregated $38,779.51.   This large indebtedness was reduced by sales of wares to Davenport & Bros. to the amount of $18,823.38.   One statement would lead to the conclusion that this firm had been thus favored, to the exclusion of others, after the company had suspended business and before the execution of the mortgage.   Another statement, which is more favorable to the defendant, shows that only $9,795.54 of the $18,823.38 were paid after the suspension.   The mortgage was executed March 27th, 1883.

In brief:   December 20th, 1881, the company was largely indebted, and amongst others owed Davenport & Bros. $18,000. This amount was increased in April, 1882, certainly to over $30,000 by payments on notes which the firm had endorsed years before.   During the year 1882, $9,795.54 was paid thereon by sales of the goods and wares as they were manufactured.   The balance, with the interest, in all $23,365.57, was secured by mortgage on real estate.   The personal property is not included. But the resolution stands and it extends to the personal estate, and it might be insisted, in case the real estate did not sell for enough to pay the mortgage in existence, that the company had the power and should secure the balance on the personal property.   The defendant claims to have $84,000 worth of property and admits he owes over $80,000.   The real estate is encumbered by $25,000 prior to the Davenport mortgage.   The court has been urged to believe that the company acted wisely, justly and equitably in preferring Davenport & Bros. to the many other creditors who had loaned their money out and out to the corporation without the slightest hope or expectation of profit beyond interest.   I cannot so regard it.   A member of the firm of Davenport & Bros. was a stockholder and an officer in the defendant company.   That firm was engaged in the crockery business.   It was linked to and interested in the company in the spirit of trade and speculation.   It was undoubtedly willing to take large risks in the hope of large profits.   They are in no sense entitled to special favor or confidence.   Evidently they have judged of what is right by the interest standard.   I am constrained to say

that the influence of the Messrs. Davenport & Bros. over this company is such as to require the court to interfere and to appoint a receiver. The standard of justice and equity compels this. I shall so advise.

*Mr. A. G. Richey* and *Mr. A. A. Clark*, for appellant.

*Mr. W. D. Holt*, for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

I agree, in the main question in this case, with the view expressed by the vice-chancellor, for it appears to me that it is conclusively shown that this company is insolvent, and is not about to resume business, within the meaning of the seventieth section of the act respecting corporations. The jurisdiction of equity, therefore, attached to the case, and the bill was properly retained. But I think the decree should be modified by expunging from it the order for the appointment of a receiver. There is not shown in the proofs any stable ground for such an intervention on the part of the court. The directors having the affairs of the corporation in charge are about winding them up. They are men of property and of experience in business, and there is every reason to believe that their closing of the enterprise will be more advantageous to the stockholders and creditors than the management of a stranger in this respect would be likely to prove. This transfer of administration appears to have been, in part, occasioned in the court below by stress of the fact that one of the directors had taken a mortgage, by way of preference, for a debt due to him, and it was indicated that such circumstance was suggestive of an influence in that quarter that might be dangerous to the interest of the other persons having a right to equitable protection. But there is no immoral taint in this mortgage; the money which it secures is honestly due; and it was made by virtue of an agreement entered into many months ago with the unanimous consent of the board of directors. No

creditor, so far, has challenged this preference, and the petitioner in this case, being a stockholder and a debtor of the company, was a party to the agreement just mentioned. The mortgage in question appears to have been given as a matter of course, and as an act in fulfillment of a fair promise. Whether such an encumbrance will stand the test of the statute which controls, in some degree, the powers of a failing corporation, is not a question that is now present for consideration. When the assets of this company, in the progress of the present proceedings, come to be marshaled by the court of chancery, then the time will have arrived to pass judgment with respect to the validity of the priority which is claimed by this creditor. In the meantime, such creditor is not chargeable with having exerted any undue influence in his own interest, or with any misconduct whatever. So far as the case shows, or as there is reason for believing, all the creditors of this company, and all its stockholders, with the single exception of the petitioner, are satisfied with its present management. A receivership would augment largely the expenses of closing up the business. Under these conditions, it seems to be entirely unnecessary to supersede this board of directors.

I shall vote to vary the decree so far as to strike from it the order appointing a receiver, such reversal to be without costs.

*Decree unanimously reversed.*